UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALEXANDRIA SARGENT, JANELLE
SARGENT, and SHATAVIA SARGENT,

                    Plaintiffs

       -against-

THE COUNTY OF NASSAU, NASSAU
COUNTY POLICE DEPARTMENT,
DETECTIVE WILLIAM T. O'BRIEN,
in his individual and official capacities,
DETECTIVE JOSEPH T. HEIMBAUER,
in his individual and official capacities,
LIEUTENANT DANIEL GALLAGHER,
in his official and individual
capacities, and OFFICERS "JOHN
DOES" 1-10, in their official and individual
capacities,

                    Defendants.

**MEMORANDUM OF
DECISION AND ORDER**


Civil Action no. 04-4274
(DRH)(AKT)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**APPEARANCES:**

**Law Offices of Frederick K. Brewington**
Attorneys for Plaintiffs
50 Clinton Street, Suite 501
Hempstead, NY 11550
By:    Frederick K. Brewington, Esq.
       Gregory Calliste, Jr.. Esq.

**Lorna B. Goodman, Nassau County Attorney**
Attorneys for Defendants
One West Street
Mineola, New York 11501
By:    Sara Wells,Esq.

**HURLEY, Senior District Judge:**

      Plaintiffs Alexandria Sargent ("Alexandria"), Janelle Sargent ("Janelle") and Shatavia

Sargent ("Shatavia") (collectively "Plaintiffs") commenced this action pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 alleging that the Defendants violated their constitutional rights when Plaintiffs were arrested and prosecuted for gang assault, assault, and robbery. Presently before the Court is the motion of Defendants The County of Nassau ('Nassau"), Nassau County Police Department ("Police Department"), Detective William T. O'Brien ("O'Brien"), Detective Joseph T. Heimbauer ("Heimbauer") and Lieutenant Daniel Gallagher ("Gallagher") (collectively "Defendants") for summary judgment. Plaintiffs have voluntarily withdrawn the claims against the Nassau County Police Department and therefore the action is dismissed as to the Police Department. For the reasons set forth below the motion for summary judgment is GRANTED as to the remaining Defendants.

### *Background*

The following facts are taken from the parties' submission and are undisputed, unless noted otherwise.[1] On October 22, 2002, while hospitalized at South Nassau Communities

---

[1] The Court is compelled to comment on the "Plaintiffs' Statement of Disputed Facts in Opposition to Defendants' Motion for Summary Judgment Pursuant to Local Rule 56.1 and Counter-Statement of Facts ("Plaintiffs' 56.1 Statement"). Local Rule 56.1 requires that on a motion for summary judgment, the moving party annex "a separate, short, and concise statement" "of the material facts as to which the moving party contends there is no genuine issue to be tried." The Rule further provides that the opposing party shall include a "correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Plaintiffs' counter-statement of material facts contravenes Local Rule 56.1 in several respects. First, as opposed to containing "a short and concise statement of the material facts" as to which they contend there exists a genuine issue to be tried, Plaintiffs included a separate section entitled "counter statement of undisputed fact" consisting of over two hundred paragraphs. More importantly, Plaintiffs are less than forthright in disputing facts. In one instance, the statement of facts is disputed without any supporting citation to any evidence. *See* Plaintiffs' Statement at 5, ¶ 18. Another example is the disputation of Defendants' first proposed undisputed fact which relates to the time, place and substance of a statement given by Nynisha

Hospital, Nynisha Preacely ("Preacely")[2] contacted the police and provided a written statement under penalty of perjury to Nassau County Police Officer D. Gibson. According to the statement, Preacely had been assaulted on October 21, 2002 by several girls at Woodfield Road and Champlain Avenue in Lakeview, Nassau County. In the statement, Preacely identified by first name a number of the girls. The statement reads in part: "I saw another girl, Shatavia, standing over me as she kicked me in my ribs. Other girls I recognized were Alex (Alexandria) Santana, and her sister Jenelle, (who are both sisters with Shatavia)." The statement indicated that one of the girls grabbed her white-gold chain and cross during the fight. Preacely further stated that her friend Tamika Campbell ("Campbell") who "had seen the whole thing" helped her home. Her family drove her to South Nassau Communities Hospital "where the doctors told [her she] had 2 broken ribs and a punctured lung on [her] right side in addition to bruising, swelling and pain to [the] right eye and a [nose] lacereration."

Heimbauer, a Nassau County Detective, was assigned the lead Detective on the Preacely case. Heimbauer and Detective Joel Mitchell interviewed Preacely on October 22, 2002 at her

Preacely to the police, a copy of which statement is attached as an exhibit on the motion. Plaintiffs dispute that statement, stating as follows: " Ms. Preacely gave three separate handwritten statements to the police, each of those statements were different in terms of who Ms. Preacely implicated in the alleged assault." Plaintiffs' 56.1 Statement at 2, ¶ 2. Having thoroughly reviewed each exhibit submitted to the Court on this motion, Plaintiff's disputation of Defendants' statement is not well taken. That Ms. Preacely gave other written statements to the police on other dates, which may or may not be consistent with the statement given on October 22, 2002, does not put in contention that she gave a written statement on October 22, 2002 or what was contained in that particular written statement. While counsel is certainly free to argue the import of allegedly conflicting statements, the attempt to create issues of fact where none exist is not helpful, either to the court or the Plaintiffs' case.

[2]The parties, as well as the materials submitted on the motion variously spell the alleged victim's name as "Preacely" and "Preasely." This Court shall use Preacely, the spelling used in the indictment.

residence after she was discharged from the hospital. Preacely signed a medical release for her records.

Also on October 22, 2002, Heimbauer went to Campbell's residence and took a statement from her under penalty of perjury. According to that statement, she saw 6 or 7 girls across the street on Woodfield Road when "all of a sudden they all came running over" to where she and Preacely were. "One yelled 'B----- you f----ed my man' they all attacked [Preacely] I saw them punch & kick [Preacely]. When [she] fell to the ground they continued stomping her until she couldn't breath. . . . A younger girl who was with them that I know from school named Alexandria stood with them watching me. All of the other girls punched and stomped [Preacely]. I know all of the girls are related, and I think they live together. . . . I didn't see Alexandria hit [Preacely]. I followed [Preacely] home. Her friend Jonathan came over and brought us to Mercy Hospital. I had to leave."[3]

Within the next week or so, as part of his investigation, Heimbauer went to the intersection of the alleged incident, faxed a copy of the medical records release to South Nassau and located police records for two of the alleged assailants.

On November 21, 2002, while she was shopping in Hempstead, Preacely saw Shatavia and one Letisha Fowler and contacted the Hempstead Police. When the Police arrived Preacely pointed the two women out as two of the persons that assaulted her on October 21, 2002. Preacely indicated that she was sure that Shatavia was one of the girls who attacked her on October 21, 2002 and that Shatavia had punched her a few times and kicked her in the ribs.

---

[3] According to Heimbauer's deposition testimony, Preacely explained the apparent inconsistency in Hospitals by telling him that they went first to Mercy and after Campbell left she went to South Nassau because she thought she would receive quicker treatment there.

4

Shatavia was arrested by the Hempstead Police.

Shatavia was eventually brought to the Nassau County Police 5th Precinct. Detective O'Brien was assigned to process Shatavia's arrest. At the time of the arrest, Lieutenant Gallagher was the desk officer and reviewed all arrest paperwork. He discussed charges with the officers prior to the charges being filed and determined whether the charges were appropriate.

Prior to processing Shatavia's arrest, O'Brien and Gallagher were aware of Campbell's October 22 statement indicating that Preacely was attacked by a group of girls and Preacely's October 22 statement indicating that Shatavia was one of her assailants. Neither O'Brien nor Gallagher saw or verified Preacely's medical records.[4]

Preacely was also brought to the Fifth Precinct and provided two written statements under penalty of perjury dated November 21, 2002. One statement is three pages long and explains that she was shopping when she saw two females who participated in the attack on her. In the statement Preacely identifies Latesha Fowler as one of her attackers. With respect to Shatavia, the statement reads: "The girl the Hempstead Police Officer grabbed that I knew as Shatavia, I am sure was one of the girls who attacked me on 10/21/02. That night I know Shatavia had punched me a few times and then after I fallen to the ground she came up to me and kicked me in my ribs about 4 or 5 times. . . . I now know Shatavia's full name is Shatavia Sargent and she is 23 years old. I want her arrested for her part in the attack upon me on 10/21/02." The second

---

[4] Plaintiffs contend that if these police officers had examined the medical records they would have seen that Preacely "in fact, did not suffer a collapsed lung as she falsely asserted . . . ." In fact, Ms. Preacely's [sic] own medical records indicated that her 'lungs are clear.'" Plaintiffs' Statement at ¶ 3. The Court notes that the records referred to state: "The lungs are clear. There is a tiny right apical pneumothorax. . . ." According to www.intelihealth.com, "[a] pneumothorax is commonly referred to as a collapsed lung."

statement is a page and a half long. It also states that while shopping Preacely saw two females: "I knew as Latesha Fowler and the other I now know as Shatavia Sargent. . . . They were both involved in an assault upon me on 10/21/02 on Woodfield Rd. W. Hempstead." The statement continues to describe how she went to the Fifth Precinct and reviewed six photographs and positively identified the subject in one of the photos as Latesha Fowler, "the person who on 10/21/02 had grabbed me by the hair and was punching and kicking me along with four other girls."

On January 28, 2003, Detective Heimbauer went to Preacely's residence and presented her with a photo array. Preacely identified Alexandria and Janelle from the photo array as two of the girls who assaulted her on October 21, 2002.

On March 31, 2003, Shatavia, Alexandria and Janelle, together with Ivory Washington and Latesha Fowler were indicted for First and Second Degree Gang Assault; First Degree Robbery; and Second Degree Assault. On that same day arrest warrants were issued for Alexandria and Janelle, as well as Ivory Washington and Latesha Fowler.

Prior to the issuance of the indictment, Heimbauer left several messages for Janelle. She admittedly only returned one call and that was on November 27, 2002. During that telephone conversation, she told Heimbauer that she worked at Home Depot and was working there on October 21, 2002 during the time the alleged assault on Preacely took place. Heimbauer testified that he went down to Home Depot and spoke with the night manager who advised him to speak to Mr. Jack. Heimbauer made at least two phone calls but was unable to get in touch with Mr. Jack. Heimbauer did not attempt to subpoena Janelle's employment records nor did he ask her to sign a release to allow him access to her employment records. Her work records demonstrate

that she was signed into work on October 21, 2002 from 1:50 to 6:42 p.m., when she took her break and from 7:31 to 10:43 p.m.

On April 25, 2003, Janelle was taken down to a precinct by two detectives for mug shots and fingerprinting. Janelle Dep. at 23-25.

On April 13, 2003, Alexandria was arrested on an unrelated matter. While in custody, a warrant check was done and revealed that Alexandria had an outstanding arrest warrant for the crime against Preacely. Alexandria was also charged with crimes against Preacely.

Nassau County Assistant District Attorney David Haber ("ADA Haber") was assigned to prosecute the criminal case against the Plaintiffs, Ivory Washington and Latesha Fowler. Prior to Plaintiff's indictment, ADA Haber was aware that Janelle claimed to be at work during the assault on Preacely and that Campbell's statement indicated that she did not see Alexandria hit Preacely.

On or about August 21, 2003, subsequent to the indictment and arrests of the Plaintiffs, ADA Haber spoke with one Gary McGraw, who was sexually involved with both Preacely and Ivory Washington. During that conversation, McGraw claimed that he may have been responsible for Preacely's injury due to an altercation that he had with her. Haber advised McGraw to speak with an attorney who could advise him of his rights and then if he still wished he could give a statement to the police. Haber gave McGraw's contact information to Heimbauer. On September 8, 2003, McGraw called Haber again and advised Haber that he received a call from a detective but could not find the name and number. Haber gave McGraw Heimbauer's information. Heimbauer testified that he did not try to contact McGraw as he understood that McGraw was going to contact him.

On September 23, 2003, the criminal bench trial was held for the Plaintiffs, together with Ivory Washington and Latesha Fowler. McCraw exercised his Fifth Amendment right against self incrimination during the trial. The Plaintiffs' attorney twice moved to have a statement of McGraw admitted into evidence during the criminal trial. Both applications were denied.

At the close of the prosecution's case, the defense attorneys, including Plaintiffs', made a motion to dismiss the charges against their clients on the grounds that the People had failed to prove a prima facie case. The motion was denied. On or about September 30, 2006, the Plaintiffs were acquitted on all charges while Ivory Washington and Latesha Fowler were convicted of the crimes.

Plaintiffs contend that in fact the altercation between Preacely and Ivory Washington –that they saw but did not participate in – occurred on October 7, 2002. According to the Plaintiffs, at the time the fight began, Alexandria was in a deli across the street. Preacely attacked Shatavia, ripping her sweater in the process. Shatavia, however, did not fight back. Preacely threatened Plaintiffs and exclaimed "all you bitches are going down." Preacely then filed a false report that the fight took place on October 21, 2002. Alexandria was not involved in and did not witness any incident involving Preacely on October 21, 2002. Janelle was at Home Depot on October 21, 2002 at the time of the alleged incident. Although both Alexandria and Shatavia admitted to the police that they were present during an altercation involving Preacely, they told the police they were not involved and that the fight did not occur on October 21, 2002.

After their acquittal, Plaintiffs brought this action pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 alleging false arrest and malicious prosecution.

***Discussion***

## I.  *Standard for Summary Judgment*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law.  *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994).  The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor.  *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried.  *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings,

9

conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

## II. False Arrest

A false arrest claim under section 1983 is substantially the same as a state claim for false imprisonment. *See Covington v. City of New York,* 171 F.3d 117, 125 (2d Cir. 1999); *Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir. 1992). "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118-19 (2d Cir. 1995); *see Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994) (existence of probable cause to arrest is a complete defense to an action for false arrest). "Probable cause is established when the arresting officer has knowledge of reasonably

trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person arrested." *Singer,* 63 F.2d at 119 (internal quotations and citations omitted). In section 1983 actions, the plaintiff bears the burden of establishing the absence of probable cause. *Campbell v. Giuliani,* 2000 WL 194815 *2 (E.D.N.Y. 2000). In evaluating probable cause for false arrest, courts must consider the information available to the officer at the time of the arrest and immediately before it. *Khan v. Ryan,* 145 F. Supp. 2d 280, 284 (E.D.N.Y. 2001) (citing *Warren v. Dwyer,* 906 F.2d 70, 73 (2d Cir. 1990)). "The question of whether or not probable cause existed may be determined as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . or may require a trial if the facts are in dispute." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996).

A. **Shatavia Sargent**

As set forth above, Shatavia was arrested, prior to any indictments, on November 21, 2002 and thus the Court must consider only the information available at that time. As of that date, Defendants O'Brien and Gallagher, the only two named individual defendants who participated in any manner in Shatavia's arrest, had three statements, all of which were made under penalty of perjury. Preacely's initial statement of October 22, 2002 referred to Shatavia standing over her and kicking her and how she was told by doctors that she had two broken ribs and a punctured lung, among other injuries. Preaceley's November 21, 2002 statements confirmed that Shatavia, whose full name she had then learned, was one of the girls who attacked her on October 21, 2002. Preacely swore that Shatavia had punched her a few times and then kicked her in the ribs. Campbell's October 22, 2002 statement confirmed that Preacely had been attacked on October 21, 2002 by a group of girls who "all attacked her" and that she saw them

punch and kick Preacely.

"An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with a crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer,* 63 F.3d at 119. *See Miloslavsky v. AES Eng'ring Soc'y, Inc.* 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd,* 993 F.2d 1534 (2d Cir. 1993) ("The veracity of citizen complainants who are the victims of the very crime they report to the police is assumed.").

Plaintiffs argue that Preacely's own criminal record raises doubts as to her veracity. Police officers are not required to engage in extensive fact-finding regarding a victim's credibility. "To insist upon a collateral investigation into the credibility of the complainants would place an unfair burden on law enforcement officers . . . . Under our system of justice, it is up to the factfinder to determine whether a defendant's story holds water not the arresting officer." *Williams v. City of New York,* 2003 U.S. Dist. Lexis 19078 at *13 (S.D.N.Y. 2003), *aff'd,* 2005 U.S. App. Lexis 1207 (2d. Cir. 2005) (internal quotations and citations omitted). Indeed, courts have found probable cause as a matter of law notwithstanding a complaining victim's prior involvement with the police. *See, e.g., Thomas v. County of Putnam,* 262 F. Supp. 2d 241, 246 (S.D.N.Y. 2003).

Nor does the fact that the police may have been aware that the incident took place over a man Preacely and Ivory Washington were both dating negate probable cause as to Shatavia because it does not reflect a relationship between Preacely and Shatavia or her sisters. *Cf. Riccuti v. New York City Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997) (finding probable cause where police chose to believe alleged victim's version of events based on visible injuries); *Mistretta v.*

*Prokesch,* 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998) (noting that the most common situation in which doubts as to veracity arise is when there exists a *prior relationship between the victim and the accused*).  In this case, Campbell's statement corroborated Preacely's claim that she was attacked on October 21, 2002 by a group of girls. *See Panetta v. Crowley,* 460 F.3d 388, 397 (2d Cir. 2006) (eyewitness account carries significant weight in assessing the reasonableness of police officer's probable cause determination).  Moreover, there was no attempt to hide the relationship between Preacely and Washington.  As Plaintiff notes "this information was obtained from the victim on October 22, 2002 and codified in O'Brien's handwritten notes."  Plaintiff's [sic] Mem. of Law in Opp. at  p. 7.   Finally, Shatavia's protestations of innocence to the police do not denigrate the presence of probable cause because an arresting officer is not required "to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." *Jocks v. Tavernier,* 316 F.3d 128, 135-36 (2d Cir. 2003).

Looking at the totality of the circumstances, *see Quinn v. City of New York,* 2003 U.S. Dist. Lexis 3521 (E.D.N.Y. 2003), the Court concludes that, as a matter of law, O'Brien and Gallagher had probable cause to arrest Shatavia.  As to Heimbauer, there is no evidence that he participated in the arrest of Shatavia.  "It is well settled in the [Second Circuit] that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (internal quotations and citation omitted).  Accordingly, summary judgment is granted in favor of the individual defendants on Shatavia's false arrest claim.

**B. Alexandria and Janelle**

As set forth above, both Alexandria and Janelle were indicted on March 31, 2003 whereupon warrants were issued for their arrest. Although there appears to be a dispute as to the events concerning their arrests, as evident from the discussion below, these disputes are immaterial to the issue at hand.

Where, as here, an arrest is made pursuant to a warrant issued after indictment, there can be no claim for false arrest. Rather, the claim must be analyzed as one for false imprisonment. *See Singer*, 63 F.3d at 117; *cf. Wallace v. Kato,* 127 S. Ct. 1091, 1096 (2007) (claim for false arrest or false imprisonment ends once victim becomes held pursuant to process; thereafter unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution). Accordingly, summary judgment is granted in favor of Defendants on Alexandria's and Janelle's claims for false arrest.[5]

***III. Malicious Prosecution***

To prevail on a claim for malicious prosecution, a plaintiff must establish (1) the defendant initiated a prosecution against Plaintiff; (2) without probable cause to believe that the prosecution could succeed; (3) the proceeding was begun with malice, and (4) the prosecution terminated in Plaintiff's favor. *Ricciuti,* 124 F.3d at 130. A claim for malicious prosecution under § 1983 requires the additional element of a "sufficient post-arraignment liberty restraint to

---

[5]The Court also notes that with respect to Defendants O'Brien and Gallagher there is no record evidence that they were involved in the arrest of either of these two plaintiffs. Accordingly, O'Brien and Gallagher are entitled to summary judgment on that basis as well. *See Wright,* 21 F.3d at 501 (2d Cir. 1994).

implicate the plaintiff's Fourth Amendment rights." *Payne v. County of Nassau,* 2005 WL

2179419 (E.D.N.Y. 2005). Under New York law, even if probable cause existed at the time of

arrest, "evidence could later surface which would eliminate that probable cause," *Cox v. County

of Suffolk,* 780 F. Supp. 103, 108 (E.D.N.Y. 1991) and the "failure to make a further inquiry

when a reasonable person would have done so may be evidence of lack of probable cause."

*Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir. 1996).

Of the five elements necessary for a malicious prosecution claim, the parties focus their

discussion on the elements of probable cause and malice.

Plaintiffs argue that Defendants lacked probable cause and/or "sufficient" probable cause

to prosecute Plaintiffs. Relying on the proposition that "the failure to make further inquiry when

a reasonable person would have done so may be evidence of a lack of probable cause" Plaintiffs

assert that "Defendants were in possession of many facts subsequent to the arrest of Plaintiffs and

before Plaintiffs' indictment that evinced the groundless nature of the charges." Plainitffs' Mem.

at 11-12. Continuing, Plaintiffs point to the following: (1) as of November 21, 2002

"Defendants" were aware of Janelle's alibi that she was at work; (2) Defendants knew on the date

the victim gave her initial statement that her own eye witness, Campbell, stated that Alexandria

"did not hit" Preacely; (3) "Defendants intentionally refused to question other eyewitnesses that

were indicated in the victim's and [Campbell's] statement;" (4) "McGraw voluntarily came forth

and advised Defendants that he was the person that caused the injuries to the alleged victim on

October 21, 2002." *Id*. at 12-14.

Putting aside McGraw for the moment, the other information argued by the Plaintiffs as

evidencing a lack of probable cause were all matters known by the police and disclosed to the

District Attorney before the grand jury indictment of the Plaintiffs on March 31, 2003.

A grand jury indictment gives rise to a rebuttable presumption that probable cause exists. *See McClellan v. Smith,* 439 F.3d 137, 145 (2d Cir. 2006).

> [T]he presumption may be rebutted by evidence of various wrongful acts on the part of police: "If plaintiff is to succeed in his malicious prosecution action after he had been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."

*Id.* (quoting *Colon v. City of New York,* 60 N.Y.2d 78, 83 (1983). *See also Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir. 2003) (presumption of probable cause may be overcome by "evidence establishing that the police witnesses 'have not made a complete and full statement of facts . . . that they have misrepresented or falsified evidence . . . or otherwise acted in bad faith.") A court "may not weigh the evidence upon which the police acted or which was before the grand jury after the indictment has issued. If Plaintiff is to succeed in his malicious prosecution action after he has been indicted, he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Colon,* 60 N.Y.2d at 83.

Here there is no evidence that Heimbauer or the other two individual police officer defendants[6] failed to disclose facts or misrepresented or falsified evidence. Heimbauer's deposition testimony that he provided Preacely's and Campbell's statements to the District Attorney and informed the District Attorney of Janelle's claim that she was at work at the time of

---

[6] The record on this motion is clear that after the arrest of Shatavia, O'Brien and Gallagher were not involved in the underlying criminal proceedings. On that basis alone they are entitled to summary judgment on the Plaintiffs' malicious prosecution claims. *See Wright,* 21 F.3d at 501 (2d Cir. 1994).

the alleged assault is uncontroverted. Heimbauer Dep. at 82-83. "[T]he police are not obligated to pursue every lead that may yield evidence beneficial to the accused, even though they had knowledge of the lead and the capacity to investigate it." *See Richards v. City of New York,* 2003 WL 21036365 at *15 (S.D.N.Y. 2003). Second, as Heimbauer disclosed the information regarding Campbell's statement and Janelle being at work to the District Attorney, he cannot be charge with bad faith. *Cf. Savino v. City of New York,* 331 F.3d 63, 74 (2d Cir. 2003). Having disclosed the information to the District Attorney, the chain of causation was broken by the prosecutor's exercise of independent judgment as to what to present to the grand jury. *See Townes v, City of New York,* 176 F.3d 138, 147 (2d Cir. 1999); *see also Zahrey v. Coffey*, 221 f.3d 342, 351 (2d Cir. 2000). A District Attorney has discretion and authority to decide what evidence to present to the grand jury and is "under no duty to present every item of arguably exculpatory evidence in seeking an indictment." *Savino*, 331 F.3d at 75. A decision not to present arguably[7] exculpatory evidence does not amount to conduct undertaken in bad faith. *Id.*

As a matter of law, the first three factors cited by Plaintiffs are insufficient to rebut the presumption of probable cause that attends to the grand jury's indictment of the Plaintiffs.

The Court now turns to the only new information that came to light subsequent to the grand jury indictment – McGraw's voluntary claim that he may have caused the injuries to

---

[7] The information relied upon by Plaintiffs is only arguably exculpatory. For example, although Campbell's statement reads in one place that she did not see Alexandria hit Preacely, at another place it states "they all attacked [Preacely]. I saw them punch and kick [her]." Similarly, Janelle's work records show she was on her break at about the time of the attack. While Janelle indicates that she does not have a car and could not have gone from Home Depot to the site of the alleged attack and back to Home Depot by bus in less than an hour, there is no indication that she could not have gone there and back had she been driven by someone.

Preacely on October 21, 2002.

When viewed in the totality of the circumstances, McGraw's unsworn statement does not vitiate probable cause. McGraw is (or, at least during the relevant time, was) apparently Ivory Washington's boyfriend. He was the man who dated both Preacely and Ivory Washington – the precipitating factor in the attack upon Preacely. Given his relationship with Ivory Washington and the fact that he did not contact the District Attorney until just several weeks before the start of the trial, it would not be inappropriate for the police and district attorney to view his statement as constructed in an effort to protect his girlfriend from conviction. Here, Preacely's version of the events was plausible and confirmed by Campbell. It is the factfinder, not the police or the prosecutor, who determines which version of disputed events holds up. *See Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989); *accord Panetta,* 460 F.3d at 396.

The presence of probable cause is fatal to Plaintiffs' malicious prosecution claims. The "favorable termination [of the criminal prosecution] has no bearing whatever in and of itself on want of probable cause." *Warren v. Byrne,* 699 F.2d 95, 98 (2d Cir. 1983).

Moreover, there is no evidence of malice in this case. Malice in the context of malicious prosecution "does not connote actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Khan v. Ryan,* 145 F. Supp. 2d 280, 285 (E.D.N.Y. 2001) (quoting *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 572 (2d Cir. 1996). Actual malice is lacking when a police officer reasonably chooses between conflicting evidence. *See Mazza v. City of New York,* 1999 Dist. Lexis 13192 (E.D.N.Y. 1999).

The motion of defendants Heimbauer, O'Brien and Gallagher for summary judgment on the Plaintiffs' claims for malicious prosecution under both state law and § 1983 is granted.

## IV. Qualified Immunity

"The qualified immunity defense is intended to strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Lee v. Sandberg,* 136 F.3d 94, 100 (2d Cir. 1997). "Police officers generally enjoy a qualified immunity from liability for their discretionary actions if their conduct does not 'violate clearly established rights of which a reasonable person would have been known,' or if it is 'objectively reasonable to believe that their acts did not violate those clearly established rights.'" *Townes,* 176 F.3d at 143 (quoting *Soares v. Connecticut,* 8 F.3d 917, 920 (2d Cir. 1993)). With respect to the qualified immunity defense to an allegation of false arrest, the Second Circuit has held:

> [T]he defending officer need only show "arguable" probable cause. . . . This is because at its heart the concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. . . . Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the Constitution . . . . Therefore, in situations where an officer may have reasonable but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity.

*Caldarola v. Calabrese,* 298 F.3d 156, 162 (2dCir. 2002) (internal quotations and citations omitted.); *see Lee,* 136 F.3d at 102 (officers are entitled to summary judgment on issue of qualified immunity if "the only conclusion a reasonable jury could reach is that reasonable

officers could disagree about the legality of the defendant's conduct under the circumstances.") "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Id. (*quoting *Gold v. City of Miami,* 121 F.3d 1442, 1445 (11th Cir. 1997)).

Even if the claims against O'Brien, Gallagher and Heimbauer were not to be dismissed for the reasons set forth above, the officers are entitled to qualified immunity. Their belief that there was probable cause to arrest and/or prosecute the Plaintiffs was objectively reasonable. Even if there is no actual probable cause in this case, there is "arguable probable cause" which entitles Heimbauer, O'Brien and Gallagher to qualified immunity.

## *V. Municipal Liability*

In Count II, captioned "Municipal Liability" Plaintiffs allege that Nassau County "has permitted, tolerated and encouraged a pattern and practice of unjustified, unreasonable and illegal abuses and arrest of Black persons by police officers of the County and the wrongful detention of the same." Further, the County has "systematically failed to identify the improper abuse, misuse, violative acts and brutality by police officers and officials, while further failing to subject such officers and officials to discipline, closer supervision or restraint." Second Amended Complaint ¶¶ 108-110. Count III, entitled "Alternate Liability of the County of Nassau" asserts respondeat superior as a basis for the County's liability. Acknowledging that respondeat superior is not now a basis for the County's liability, Plaintiffs submit that there is a good faith basis for modification of that rule. *Id.* at ¶¶ 117-120.

As a preliminary matter, both Counts II and III fail as against the County. In order to

prevail on a § 1983 claim against a municipal defendant, a plaintiff must establish both a violation of her constitutional rights and that the violation was motivated by a municipal custom or policy. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Neither element is present here.

The absence of a constitutional violation by the individual defendants, by itself, mandates the dismissal of the claims against the County. *See City of Canton v. Harris,* 489 U.S. 378, 388 (1989) ("adequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact); *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). Additionally, Plaintiff has failed to offer any evidence of a policy or custom. Accordingly, Counts II and III fail as a matter of law against Nassau County. *See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (noting that "the mere invocation of the 'pattern' or 'plan' will not suffice") (citations omitted); *Middleton v. City of New York,* 2006 U.S. Dist. Lexis 44320 (E.D.N.Y. 2006) (allegations of a isolated incident of police misconduct will not suffice).

## *VI. The Section 1985 Claim*

In their fourth cause of action, Plaintiffs assert a violation of § 1985. Section 1985(3) provides in pertinent part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for

the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. §1985(3).

To succeed on a cause of action under § 1985(3), Plaintiff must allege:

"(1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999); *see also Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir. 1988). Further, "[t]here must be some racial or perhaps otherwise class-based invidiously discriminatory animus behind the conspirator's action." *Griffen v. Breckenridge,* 403 U.S. 88, 102 (1971); *see Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999)*; Gagliardi v. Village of Pawling,* 18 F.3d 188, (2d Cir. 1994).

Defendants move to dismiss the § 1985 claim on the ground that it is barred by the intracorporate or intra-enterprise conspiracy doctrine as the individual defendants are all employed by the same institutional defendant – the County of Nassau. Additionally, Defendant cite to the absence of any evidence of racial or otherwise class-based invidiously discriminatory animus.

In their second amended complaint, Plaintiffs do not allege any racial or class-based

invidiously discriminatory animus behind the Defendants' alleged conspiracy. *See* Second Amended Complaint at ¶¶121-29. Nor is there evidence in the record to support such a claim. *See Hermann v. Moore,* 576 F.2d 453, 457 (2d Cir. 1978). Accordingly, on that basis the motion for summary judgment on the §1985 claim must be granted.

Plaintiff has also failed to establish a conspiracy involving two or more legal entities. *See* 42 U.S.C. § 1985(3) (requiring a conspiracy of "two or more persons"); *Girard v. 94th and 5th Avenue Corp.*, 530 F.2d 66, 70 (2d Cir. 1976) ("A legally sufficient § 1985(3) complaint must aver a conspiracy between two or more persons . . . ."). Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together. *Nassau County Employee "L" v. County of Nassau*, 345 F. Supp. 2d 293, 304-05 (E.D.N.Y. 2004); *Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347, 359 (E.D.N.Y. 1999); *see also Hermann,* 576 F.2d at 459; *Girard v. 94th and 5th Avenue Corp.*, 530 F.2d 66, 71 (2d Cir. 1976). The doctrine includes allegations of conspiratorial conduct between a public entity and its employees. *Everson v. N. Y. City Transit Auth.*, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002). Here, the only evidence submitted by Plaintiffs are acts by Nassau County and its employees. Nor is there evidence that any of the defendants possessed "independent conspiratorial purposes" which if present, would vitiate the applicability of the intracorporate conspiracy doctrine. *See Yeadon v. New York City Transit Auth.,* 719 F. Supp. 204, 212 (S.D.N.Y. 1989).

The motion for summary judgment on the § 1985 claim is granted.

## VII.    The Section 1986 Claim

It is well-established that a violation of § 1986 is predicated on a violation of § 1985, as the former provides a remedy for the violation of the latter.  *See, e.g., Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000) ("[A] § 1986 claim must be predicated on a valid § 1985 claim . . . .").  Because Plaintiffs have not sustained their burden to show a violation of § 1985, they cannot succeed on a § 1986 claim. Defendants' motion for summary judgment on the § 1986 claim is granted.

## VIII.  Other Matters

In connection with their summary judgment motion, the Defendants submitted portions of the transcripts of the Plaintiffs criminal trial.  Plaintiffs objected to the use of the transcripts and seek to preclude their use on the motion for summary judgment and/or trial.  Plaintiffs contend that preclusion is appropriate as the "circumstance surrounding the criminal prosecution of Plaintiffs are at issue and sharply in dispute in the instant federal matter" and "Defendants never disclosed, or made any mention of the criminal trial transcript to Plaintiff [sic] during discovery in this matter." [Docket No. 65]  Defendants response is that (1) they did not have custody and control of the criminal trial transcript and in fact had to provide the Court Reporter with an authorization (an unsealing order) from Plaintiffs consenting to the release of the transcripts[8] and (2) the disclosure of the criminal trial transcripts was not raised during discovery conferences. [Docket No. 67] As the Court did not considered the submitted criminal trial transcripts in

---

[8] According to the Second Amended Complaint, Plaintiffs' motion in Nassau County Supreme Court to file a late notice of claim (*see* N.Y. Gen. Municipal Law § 50-e et seq) was granted "contingent upon the Plaintiffs stipulating to allow [Nassau County] to unseal the records pertaining to the criminal action, which were sealed after the Plaintiffs were fully acquitted . . . ." Second Amended Complaint ¶ 7.

reaching its decision and as the Court has granted the motion for summary judgment, the request for preclusion is academic and therefore dismissed.

### *Conclusion*

For the reasons set forth above, the claims against Defendants Nassau County Police Department and Officers John Doe 1-10 are DISMISSED.  The motion of Defendants County of Nassau, Detective William O'Brien, Detective Joseph T. Heimbauer, and Lieutenant Daniel Gallagher for summary judgment is GRANTED in its entirety.  The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
        March 13, 2007

/s/_____
Denis R. Hurley
Senior District Judge